IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Diana Torres Rios; Dianeliz Thillet Torres, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Dorado Health Center, Inc., et al.,<br><br>Defendants. | **Civil No. 22-1129(GMM) & 22-1313 (GMM) (consolidated with Civil No. 22-1129)** |

## OPINION AND ORDER

Before the Court is Plaintiffs Diana I. Torres-Rios, Carlos I. Ortiz-Torres, Dianeliz Thillet Torres' (collectively, "Plaintiffs") *Motion in Limine to Exclude Defendants' Experts* ("*Motion in limine*"). (Docket No. 88). Therein, Plaintiffs seek to strike Defendants Dorado Health, Inc. d/b/a Manatí Medical Center ("MMC") and Dr. Yolisa Suárez's ("Dr. Suárez") expert witnesses for failure to comply with court-imposed discovery deadlines. After reviewing the Parties' submissions, pertinent law, and the applicable rules of procedure, the Court GRANTS IN PART and DENIES AS MOOT IN PART Plaintiffs' *Motion in limine*.[1]

---

[1] The Court finds Plaintiffs' request to exclude the testimony of MMC's expert to be moot in accord with the filing of a Joint Informative Motion at Docket No. 106 which notified that Plaintiffs and MMC reached a confidential agreement, and thus would not be proceeding to the scheduled trial. Thus, the Court need not determine whether MMC's expert testimony at trial should be precluded.

## I. BACKGROUND

On July 25, 2021, Mr. Carlos Iván Ortiz-Negrón ("Mr. Ortiz") was brought to MMC's Emergency Room ("ER"). Mr. Ortiz reported discomfort and displayed petechiae on his lower left leg. Mr. Ortiz had a history of hypertension and hypothyroidism. After his arrival, Dr. Suárez evaluated Mr. Ortiz and documented that he came to MMC's ER with left leg edema and pain. She also noted that Mr. Ortiz denied chest pain, shortness of breath, and/or fever. The Report of Dr. Suárez's physical examination of Mr. Ortiz recorded that he presented with: (1) ecchymosis (bruising), (2) edema on his lower extremity, and (3) swelling in his upper leg and knee. Dr. Suárez also concluded that Mr. Ortiz's chest, respiratory, and cardiovascular exams were normal, and that he was stable, alert, and displayed no acute distress or palpitations. Dr. Suárez ordered a duplex Deep Venous Thrombosis ("DVT"), as well as I.V. fluids, medications, X-Rays, and lab tests. Dr. Suárez's orders also included an urgent blood work to determine Mr. Ortiz's D-Dimer level and an urgent doppler ultrasound of Mr. Ortiz's left leg to evaluate him for DVT.

On the morning of July 26, 2021, Mr. Ortiz was found pale and sweaty on the floor of the corridor after he had gotten up to use the bathroom. Mr. Ortiz was taken to the CPR room for evaluation where he complained of chest pain, diaphoresis, and displayed an increased respiratory rate followed by sudden hypotension and use

of accessory respiratory muscles. Around one hour later, and after 40 minutes of aggressive resuscitation, Mr. Ortiz was pronounced dead.[2]

Following these unfortunate events, on March 15, 2022, Plaintiffs brought this civil action pursuant to the Emergency Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. §§ 1395dd *et seq.*, and Puerto Rico's general tort statute. *See* (Docket No. 1 ¶ 2).[3] Therein, Plaintiffs claimed that MMC failed to screen and stabilize[4] Mr. Ortiz as required by EMTALA. *See* (id. ¶ 3). Furthermore, Plaintiffs claimed that MMC and Dr. Suárez failed to provide Mr. Ortiz with medical care consistent with the applicable standards of the medical profession. This failure, Plaintiffs posit, caused the health complications that led to Mr. Ortiz's death. *See* (Docket No. 1 ¶¶ 66-75).

On May 31, 2022, the Court entered its *Case Management Order*. *See* (Docket No. 17). Therein, the Court set the deadline for conclusion of all discovery for November 30, 2022. *See* (id. at 1). However,

> [e]xpert reports, reply reports, and supplements to expert reports and reply reports must be disclosed to the parties **no later than 60 days before the discovery**

---

[2] The Court notes that these facts are to be taken as true only for the purposes of this motion. Furthermore, these facts are not meant to be a thorough recount of the events that transpired on July 25 and 26, 2021.
[3] On June 29, 2022, Plaintiff Dianeliz Thillet Torres filed a Complaint in Civil Case No. 22-1313 with the same causes of action and the same operative facts. The Court consolidated both cases on September 6, 2022. *See* (Docket No. 22).
[4] The Court dismissed Plaintiffs' stabilization claims under EMTALA with prejudice. *See* (Docket No. 39).

> cutoff date to allow for meaningful discovery to take place with regards to those materials. **The parties shall provide all such reports within a reasonable period in advance of the corresponding expert's deposition. Failure to do so may result in an order striking the material not so provided.**

(Id. at 1) (emphasis added). The pre-trial conference and the trial were not set at this time.

After the motion for summary judgment-stage of the case concluded, Plaintiffs filed a *Motion to Set Pre-Trial and Trial* (Docket No. 41) and requested the Court to set a pre-trial conference and trial at the earliest available date on the Court's calendar. The Court thus set the following schedule: (1) trial was set to be held February 5, 2024 through February 16, 2024; (2) a pre-trial conference would be celebrated on January 29, 2024; (3) the deadline for the proposed joint pretrial order, proposed *voir dire*, preliminary and final jury instructions was January 8, 2024; and (4) the deadline for motions in limine was January 16, 2024. (Docket No. 42).

On January 12, 2024, the Parties filed their *Joint Proposed Pretrial Order* ("Pretrial Order") for the Court's consideration. (Docket No. 64). Therein, Dr. Suárez informed the Court that she intended to use Dr. Fernando Soto ("Dr. Soto") as her expert witness to testify about "his expert opinion as to the intervention of Dr. Suarez." (Docket No. 64 at 58.). In response, Plaintiffs objected to Dr. Suárez's naming of her experts and moved to strike

**Civil No. 22-1129(GMM)**
**Page -5-**

him outright since "[n]o expert report was ever submitted by any defendant. . ." (Id. at 61).

At the behest of Dr. Suárez, the Court continued the trial until August 26, 2024. (Docket Nos. 68; 76). On August 2, 2024, the Court held the pre-trial conference. (Docket No. 102). During the pre-trial conference, Plaintiffs reiterated their objection to the naming of Dr. Soto as an expert for Dr. Suárez. (Id. at 3-4). At that time, the Court noted the objection. (Id.). Shortly thereafter, Plaintiffs filed their *Motion in limine* on August 6, 2024. *See* (Docket No. 88). On August 12, 2024, MMC and Dr. Suárez jointly opposed the *Motion in limine*, and, on August 13, 2024, Plaintiffs replied. (Docket Nos. 96; 100).

Plaintiffs argue that Dr. Soto never produced his expert report. *See* (Docket No. 95 at 2). Defendants, on the other hand, jointly argue that even if the disclosures of their expert reports were late, they were harmless since they had "disclosed their desire and intent to use expert witnesses and provided their reports over a year prior to trial." (Docket No. 96 at 5). Furthermore, Defendants posit that until now Plaintiffs never opposed the proposed experts, the late disclosure of the reports, nor requested an extension of discovery. *See* (id.).

## II. LEGAL STANDARD

A.   Fed. R. Civ. P. 26 and 37

"Parties are required to identify their expert witnesses and, unless the court specifies otherwise, a written report must accompany the disclosure." Santiago-Lampon v. Real Legacy Asssur. Co., 293 F.R.D. 86, 87 (D.P.R. 2013) (*citing* Fed. R. Civ. P. 26(a)(2)(A)-(B)); *see also* Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 77 (1st Cir. 2009). An expert disclosure must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D); *see also* Lawes v. CSA Architects and Engineers LLP, 963 F.3d 72, 90 (1st Cir. 2020) ("Plaintiffs and defendants alike must identify their expert witnesses and produce their experts' reports by court-approved deadlines."). If a party fails to provide witness disclosures as required by Federal Rule of Civil Procedure 26 and at the time and in the sequence that the Court orders, then that party "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). This is so since "Rules 26 and 37 operate to 'prevent the unfair tactical advantage that can be gained by failing to unveil an expert in a timely fashion, and are designed to 'facilitate a fair contest with the basic issues and facts disclosed to the fullest practical extent.'" Gay v. Stonebridge Life Ins. Co., 660 F.3d 58, 62 (1st Cir. 2011) (*quoting*

Newell Puerto Rico, Ltd. v. Rubbermaid Inc., 20 F.3d 15, 22 (1st Cir. 1994)) (internal citation omitted); *see also* Lohnes v. Level 3 Commc'ns, 272 F.3d 49, 60 (1st Cir. 2001).

"Preclusion, however, 'is not a strictly mechanical exercise.'" Esposito, 590 F.3d at 77 (*quoting* Santiago-Diaz v. Laboratorio Clinico Y De Referencia Del Este, 456 F.3d 272, 276 (1st Cir. 2006)). The Court, in its discretion, may choose a less severe sanction. *See* id.; *see also* Laplace-Bayard v. Batlle, 295 F.3d 157, 162 (1st Cir. 2002) ("[D]istrict courts have broad discretion in meting out. . .sanctions for Rule 26 violations."). The First Circuit instructs that, when a district court opts in favor of preclusion, it must consider certain factors including:

> (1) the history of the litigation; (2) the sanctioned party's need for the precluded evidence; (3) the sanctioned party's justification (or lack of one) for its late disclosure; (4) the opponent-party's ability to overcome the late disclosure's adverse effects—e.g., the surprise and prejudice associated with the late disclosure; and (5) the late disclosure's impact on the district court's docket.

Esposito, 590 F.3d at 78 (*citing* Macaulay v. Anas, 321 F.3d 45, 51 (1st Cir. 2003)). Ultimately, the "focus of a preclusion inquiry is mainly upon surprise and prejudice" to the opposing party. Lawes, 963 F.3d at 92 (*quoting* Thibeault v. Square D Co., 960 F.2d 239, 246-47 (1st Cir. 1992)).

On the issue of expert preclusion, district courts are reviewed under the highly deferential standard of abuse of

discretion. *See* Gagnon v. Teledyne Princeton, Inc., 437 F.2d 188, 191 (1st Cir. 2006)(*quoting* Delaney v. Matesanz, 264 F.3d 7, 13-14 (1st Cir. 2001)). Indeed, a party opposing preclusion "shoulders a 'heavy burden' to show that an abuse has occurred." Santiago-Diaz, 456 F.3d at 276-77.

### III. DISCUSSION

In accord with MMC and Plaintiff's joint filing at Docket No. 106, the Court finds it unnecessary to address the requested preclusion of MMC's expert's testimony at the anticipated trial. Thus, the Court proceeds to consider whether Dr. Soto will be allowed to serve as an expert witness for Dr. Suárez.

Dr. Suárez avers that she notified Dr. Soto's expert report on January 27, 2023, that is four months after the deadline to notify expert reports, and two months after the discovery cut-off date. *See* (Docket No. 96 at 3). Dr. Suárez's failure to comply with the Court's *Case Management Order* and, by extension, Rule 26 of the Federal Rules of Civil Procedure, "warrants a baseline sanction of preclusion. . ." *See* Irizarry-Santiago, 293 F.R.D. at 84 (*citing* Esposito, 590 F.3d at 77; Santiago-Diaz, 456 F.3d at 276).

1. History of the Litigation

Notably, Plaintiffs underscored that Dr. Soto's expert report "has never even been produced." *See* (Docket No. 88 at 2). First, there is nothing on the record to support Dr. Suárez's

contention that she actually notified Dr. Soto's expert report on January 27, 2023. Even assuming *arguendo* that Dr. Suárez notified Dr. Soto's expert report on January 27, 2023, she did so four months late. Moreover, the Court notes that Dr. Suárez has a history of not complying with the Court's scheduling orders. For instance, she filed her *Motion for Summary Judgment* on November 27, 2023, 332 days after the deadline set forth in the *Case Management Order* to file dispositive motions. *See* (Docket Nos. 17; 43-45; 56). Thus, the history of the litigation weighs in favor of preclusion.

### 2. Dr. Suárez's Need for Dr. Soto's Testimony

Dr. Suárez did not brief her need for Dr. Soto's testimony. In the Parties' Pretrial Order, Dr. Suárez informed that Dr. Soto's testimony would consist of "his training and experience, documents studied, the applicable literature and will render his expert opinion as to the intervention of Dr. Su[á]rez." (Docket No. 64 at 58). The Court presumes that Dr. Suárez's need for Dr. Soto's testimony is great and accordingly finds that this factor weighs against preclusion.

### 3. Dr. Suárez's Justifications for her Late Disclosure

Dr. Suárez failed to provide any justification for her late disclosure.[5] Accordingly, this factor too weighs in favor of preclusion.

### 4. Plaintiffs' Ability to Overcome the Late Disclosure

Dr. Suárez argues that her late disclosure is harmless. The Court holds otherwise. At this juncture, less than a week before trial, the record is devoid of any proof that Dr. Suárez actually notified her expert report on January 27, 2023. This is to say, the failure to disclose Dr. Soto's expert report, fully prevents Plaintiffs from preparing to defend themselves against that testimony at trial. Regardless, even if Dr. Suárez notified her expert report on January 27, 2023, she did so two months after the discovery cut-off date, thereby depriving Plaintiffs of the opportunity to conduct expert-related discovery as to Dr. Soto. "This is exactly the type of unfair tactical advantage that the disclosure rules were designed to eradicate." Lohnes, 272 F.3d at 60 (citing Thibeault, 960 F.2d at 244). Thus, this factor also weighs in favor of preclusion.

---

[5] The Court notes that Dr. Suárez informed that her current counsel appeared in the case on November 1, 2022. See (Docket Nos. 96 at 2; 27). This is no justification for her late disclosure since "a lawyer assumes a case as he or she finds it, and a party may not alter the case's schedule. . ." Irizarry-Santiago, 293 F.R.D. at 84.

> 5. <u>The Impact the Late Disclosure has on the Court's Docket</u>

Finally, the Court "has an interest in the efficient management of its docket." <u>Santiago-Diaz</u>, 456 F.2d at 277. "Whenever a party, without good cause, neglects to comply with reasonable deadlines, the court's ability to manage its docket is compromised." <u>Id.</u> As such, this final factor weighs in favor of preclusion.

Ultimately, Dr. Suárez's late disclosure was neither substantially justified nor harmless. Accordingly, Dr. Soto's expert testimony is precluded from being presented in the jury trial set for August 26, 2024.

## IV. <u>CONCLUSION</u>

For the reasons stated above, the Court GRANTS IN PART and DENIES AS MOOT IN PART Plaintiffs' *Motion in limine*. Dr. Soto is precluded from testifying at trial.

IT IS SO ORDERED.

In San Juan, Puerto Rico, August 23, 2024.

                                                  s/Gina R. Méndez-Miró
                                                  GINA R. MÉNDEZ-MIRÓ
                                                  UNITED STATES DISTRICT JUDGE